**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ALONZO BRADLEY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-0869-O |
| | § | |
| RAYTHEON COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's order of reference filed on July 29, 2009, (Doc. 29), came on to be considered Defendant's Motion for Summary Judgment (Docs. 45-48) filed on September 18, 2009. Having considered the relevant pleadings, and for the reasons discussed below, the court finds and recommends as follows:

*Procedural History:*

On May 21, 2008, Plaintiff Bradley filed a complaint alleging violations of 42 U.S.C. § 1982 for refusal to consider for positions and / or failure to hire and racial discrimination and retaliation under 42 U.S.C. § 2000e, et. seq. and 42 U.S.C. § 1981. (Pl. Compl. at 7-9).

On September 18, 2009, Defendant filed its motion for summary judgment now before the court, (Docs. 45-48), and on October 8, 2009, Plaintiff filed his response. (Docs. 51-53). On October 24, 2009, Defendant filed a reply. (Doc. 54). On October 27, 2009, Defendant filed a motion to strike Plaintiff's appendix in support of his response. (Doc. 55). On November 4,

2009, Plaintiff filed a sur-reply to the motion for summary judgment.  (Docs. 56-58).  On November 9, 2009, Defendant filed an objection and motion to strike Plaintiff's sur-reply, or in the alternative, for fifteen days to respond to Plaintiff's sur-reply.  (Doc. 59).  On November 10, 2009, Defendant filed a motion to seal parts of Plaintiff's response appendix.  (Doc. 60).  On November 13, 2009, Plaintiff filed a response to Defendant's motion to strike his summary judgment evidence (Doc. 62).

Also on November 13, 2009, the court granted in part and denied in part Defendant's motions to strike Plaintiff's sur-reply and Defendant's motion to seal parts of the summary judgment appendix.  (Doc. 61).  On November 16, 2009, after the court had already issued the order that granted in part and denied in part Defendant's motions to strike the sur-reply and to seal Plaintiff's summary judgment appendix, (Doc. 60), Plaintiff filed responses (incorrectly designated as replies) (Docs. 63-64) to those motions.  The post-order submissions do not present any arguments which warrant any changes to the court's November 13, 2009 order.  On December 1, 2009, Plaintiff filed an opposed motion (Doc. 66) which in essence seeks permission to resubmit the documents that the court struck in its November 13, 2009 order.

*Summary Judgment Standard*:

A party may move for summary judgment in the party's favor at any time.  Fed. R. Civ. P. 56(b).  To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and that judgment should be entered as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986).  The materiality of facts is determined by substantive law.  *Anderson*, 477 U.S. at 248.  An issue

is "material" if it involves a fact that may affect the outcome of the suit under governing law.

*See Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994).  If the moving

party presents evidence tending to show the absence of any genuine issue of fact, the opposing

party must then identify specific evidence in the record which establishes the existence of one or

more issues of fact, i.e., a non-movant may not merely rely on his pleadings.  *See Anderson*, 477

U.S. at 256-57; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

585-87, 106 S. Ct. 1348 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th

Cir. 1998).  In analyzing the competent evidence proffered by the parties, the facts and the

inferences to be drawn are viewed in the light most favorable to the non-movant.  *Hibernia Nat'l*

*Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993); *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th

Cir. 1989).

*Factual Background*:

 Bradley was extended an offer of employment by Amos Wilson, an African-American

human resources manager, on behalf of Raytheon, around November 2005.  (Def. App. 292 ¶ 3).

Bradley accepted, and began work as a Software Engineer II in Rick Garcia's group.  (Def. App.

313 ¶ 2).  In July 2006, Bradley took an assignment as a risk manager on the PRISM project

(Process Re-invention Integrating Systems for Manufacturing), outside of Garcia's group, and

under the supervision of Garey Gaston.  (Def. App. 274-275 ¶ 3).  However, Bradley remained

under Garcia's supervision for performance reviews and financial accountability.  On December

7, 2006, Bradley met with Garcia for a performance review.  (Def. App. 109).  Bradley alleges

that during this meeting, Garcia told Bradley that he did not want Bradley back in his section and

not to expect to return after the PRISM assignment ended.  (Def. App. 109).  In his declaration,

Garcia relates that he explained to Plaintiff that he had serious concerns based on Bradley's performance, and that his section was not projected to need another Software Quality Engineer (SQE) around the time Bradley was scheduled to finish the PRISM project.  He encouraged Bradley to seek other employment opportunities within Raytheon.  (Def. App. 316 ¶ 11). Bradley began to apply to new internal positions.

On January 15, 2007, Bradley interviewed for an Intelligent Information Systems (IIS) Risk Manager position, requisition IIS106969, in Sheree Havlik's group.  Bradley claims the interview went well.  Havlik ultimately selected Auldwyn "Danny" Grub, an African-American male who was already working in her section, for the position.  (Def. App. 285-286 ¶ 3). Bradley claims that during the interview, Havlik stated that no one in her business unit was available for the position.  In her declaration, Havlik stated that Grub did not become available for the position until after she had interviewed Bradley.  *Id.*

Deborah Ibarra replaced Rick Garcia as Bradley's section manager in March 2007, and held that position through the time of the reduction in force ("RIF") that resulted in Bradley's termination in September 2007.  (Def. App. 297 ¶ 2-3).  On March 15, 2007, Garcia and Ibarra met with Bradley to go over his 2006 performance review, which Garcia had completed.  (Def. App. 048-052, 297-298 ¶ 4-5, 317-318 ¶ 14-17).  Garcia stated that he rated Bradley as "meets requirements" based on positive feedback he received regarding Bradley's performance on PRISM in December 2006, notwithstanding his personal concerns about Bradley's prior history of poor performance while working directly for his section.  (Def. App. 318 ¶ 15).

In mid-April 2007, Bradley applied for a Senior Software Engineer II position, requisition SAS106398, that was opened to replace a vacant Software Quality Engineer (SQE)

position in the ATFLIR (Advanced Targeting Forward Looking Infrared) program after learning

that no one else had applied for the position.  The position was in his section, which was

managed by Ibarra.  After he submitted his application, the job requisition was cancelled, and the

former SQE position was filled by Mike Bailey, an employee then working in Ibarra's

department who was qualified to work in the ATFLIR program, and who had finished the project

on which he had been working, and was in need of a new assignment.  (Def. App. 298-299 ¶ 6).

On April 24, 2007, Bradley met with Ibarra and Amos Wilson.  As related in his EEOC

complaint, Bradley stated that Ibarra "made clear again that [he] should not apply for requisition

(sic) in her section."  (Def. App. 110).  In her declaration, Ibarra stated that she explained to

Bradley that he did not have to apply for positions within her department, as he was already

assigned to her department and was committed to the PRISM program.  (Def. App. 299 ¶ 7).

In "May / June 2007", Bradley arranged a lunch meeting which he and three other

African-American employees, Angela Oates, (throughout his briefs, Bradley spells Angela as

"Angles"), Christopher Spears, and Amos Wilson attended.  (Def. App. 108).  Although he

claims that at this meeting Ms. Oates discussed a past discrimination case she had brought

against Raytheon, these statements attributed to Oates constitute inadmissible hearsay.  The only

other evidence proferred regarding the details of this meeting is the declaration of Amos Wilson,

in which he denies that any conversation regarding discrimination occurred.  (Def. App. 294 ¶

7).  Bradley has not offered any competent evidence as to statements made by either Oates or

Spears during the luncheon.

Bradley states that in early August 2007, he applied for a Senior Software Quality

Engineer II position in Ibarra's section, but that he was not interviewed for this position, and that

Ibarra hired two new employees from outside of Raytheon for her department.  In her declaration Ibarra reports that she offered positions in her department to Karen Skinner, a Caucasian female, and to Thomas Brooks, an African-American male, on July 13, 2007, and that both accepted the offers to report to work on August 13, 2007, on or before July 31, 2007.  She further identified reasons why she did not select Plaintiff for the position, to wit because she wanted him to complete his PRISM project assignment and she had concerns with his performance as an SQE (Def. App. 302 ¶ 13).  She also related that on August 8, 2007, her manager, Bill Shieldes, informed her that she would be required to select an employee from her department for separation as part of a larger reduction-in-force ("RIF") by Defendant.  (*Id*. at ¶ 12).  In constructing her matrix for identifying the employee to be selected for separation, Ibarra excluded Ms. Skinner and Mr. Brooks from consideration since neither had yet reported for work.  (*Id*. at ¶ 13).  Of the five employees subject to being RIF'd, three- including Plaintiff- were African-American.  Bradley scored the lowest in all four categories on the evaluation: current performance, job knowledge / skills, flexibility / initiative, and years of service.  *Id*. After Ibarra completed the rankings, Shieldes adjusted them.  Bradley had the lowest score both before and after the adjustments by Shieldes, with a final score of  4 points, while the others had scores of 12, 14, 15, and 15 points.  *Id*. Two of the four employees that remained in Ibarra's department after the RIF were African-American.  *Id*.

On August 22, 2007, prior to hearing about the pending RIF, Bradley had a telephone meeting with Raytheon's human resources representative Julia Cutsinger.  Bradley claims to have detailed his concerns regarding the cancellation of one requisition and his non-selection for a second requisition in Ibarra's section.  Bradley alleges that Cutsinger stated she would speak to

Ibarra and get back to him, but that he never heard back from Cutsinger directly and that he felt

that this was the beginning of the process for his layoff.  (Def. App. 111).  Cutsinger, on the

other hand, declared that during their call, "Plaintiff never claimed he was being treated unfairly

or differently than anyone else, whether on the basis of his race or otherwise."  (Def. App. 310).


Bradley further claims that in early September 2007, he received notice from Garey

Gaston that his Risk Manager Lead position would be given to Insun Chang following the

August Risk Review Board meeting.  (Def. App. 111).  In his declaration, Gaston stated that

Chang, who was on the same management level of E-07 as Gaston, was hired to replace Maria

Lee, and not to replace Bradley.  (Def. App. 275 ¶ 4).

On September 7, 2007, Bradley was informed that his position would be eliminated

effective September 21, 2007.  He questioned why he was included in the RIF of Ibarra's section

when he was working on the PRISM project in a different section and PRISM was scheduled to

continue until February 2008.  He was not satisfied with Raytheon's explanation that his current

position was charged to Ibarra's section, even though he was assigned to the PRISM project,

which was profitable at that time.  Bradley was informed that if he could find another position

within Raytheon prior to the September 21, 2007 termination date, he would not be laid off.

Bradley applied for a Software Configuration Management position, requisition

SAS107601, in Robert Lawrence McCabe's section in September 2007.  McCabe stated that he

was interested in Bradley but would not be conducting interviews prior to Bradley's layoff date.

Bradley requested an extension of his termination date, which was denied.  (Def. App. 111-112).

The job requisition was subsequently withdrawn when McCabe filled it with an employee from

within his unit who became available after the requisition was posted.  (Def. App. 288-289 ¶ 3-4).

On October 8, 2007, Bradley filed a complaint of discrimination in employment under federal government contracts with the U.S. Department of Labor Office of Federal Contract Compliance Programs (OFCCP).  (Def. App. 105-112).[1]  He attached a five-page letter to his complaint, dated October 9, 2007, detailing his allegations of discrimination.[2]  (Def. App. 108-112).  On November 15, 2007, Bradley filed a charge of discrimination, charge no. 4502008-377, with the Equal Employment Opportunity Commission (EEOC).  (Def. App. 114).[3]  On February 5, 2008, the EEOC had made a preliminary determination to dismiss Bradley's charge of employment discrimination.[4]  (Def. App. 115).  On February 27, 2008, the EEOC issued a

---

[1]On the complaint form, Bradley checked boxes indicating the actions taken by Raytheon based on his race involved: hiring, layoff, wages, promotion, job assignment, retaliation, intimidation.  (Def. App. 106).

[2] To the extent the facts set forth above describe Bradley's allegations, they are largely drawn from this letter, which sets forth his grievances more completely and coherently than do his pleadings.

[3] Bradley checked boxes alleging discrimination based on race and retaliation, detailing the following five personal harms (followed by the reasons he states Raytheon gave him for each action): (1) Nonselection for Senior Software Engineer II position in April or May 2007 (he was told the position had been cancelled); (2) nonselection for Senior Software Quality Engineer II position in August 2007 (he was told the position had been filled); (3) nonselection for Software Configuration Management position in September 2007 (no reason given); (4) reassignment of his then-current Risk Management Lead position to a less-qualified white male on September 21, 2007 (he was told the white male had more experience in key practice areas); and (5) being laid off on September 21, 2007 (he was told his current position was being cancelled).

[4] In his letter, the EEOC's district director stated that the information provided by Bradley was insufficient to overcome the validity of Raytheon's explanation that he was laid off based on his performance as part of a RIF.  It noted that one of the jobs Bradley sought was later filled by another African-American male, and that "[w]hile not inherently controlling in our assessment of the charge, we also considered the lack of direct evidence of discrimination /

dismissal and notice of suit rights stating that Bradley had 90 days to file a lawsuit in state or federal court if he wished to do so.  (Def. App. 116).  On May 21, 2008, Bradley timely filed a complaint alleging violations of 42 U.S.C. § 1982 for refusal to consider for positions and / or failure to hire and racial discrimination and retaliation under 42 U.S.C. § 2000e, et. seq. and 42 U.S.C. § 1981.  (Doc. 1, Pl. Compl. at 7-9).

_Discussion:_

Raytheon argues that (1) Plaintiff fails to state any actionable claims under § 1982, (2) his Title VII claims based on alleged conduct prior to January 20, 2007 are barred due to failure to timely file a charge on those matters, (3) his discrimination claims fail as a matter of law because he cannot show a prima facie case of discrimination and cannot overcome Raytheon's legitimate non-discriminatory reason for discharging him, (4) his discrimination claims premised on non-selection fail as a matter of law, (5) his discrimination claims based on harassment fail as a matter of law, and (6) his retaliation claims fail as a matter of law.  In response, Bradley argues that factual disputes exist regarding Raytheon's failure to hire him for an IIS Risk Manager position in Havlik's section, its failure to interview or consider him for an ATFLIR SQE position or for two other SQE positions within Ibarra's section, his September 2007 removal from the PRISM Risk Manager position, and whether Raytheon retaliated against him and terminated him based on his race.  The issues raised in Raytheon's motion for summary judgment will be addressed in the numerical sequence set forth above.  Plaintiff's arguments with respect to each

---

retaliation and that there are no indications from the information you provided that other witnesses could support your claims of discriminatory treatment with _specific, relevant_ information that would support a finding of violation in light of the available evidence."  (Def. App. 115) (emphasis in original).

issue are incorporated into the discussion of each issue.

**(1) Plaintiff's § 1982 claims**

First, Raytheon argues that Bradley has failed to state any actionable claims under § 1982, which is intended to bar racial discrimination in the sale or rental of property.  In his complaint, Bradley alleged violations of 42 U.S.C. § 1982 for refusal to consider for positions and / or failure to hire, 42 U.S.C. § 1981 for refusal to consider for positions and / or failure to hire,  and racial discrimination and retaliation under 42 U.S.C. § 2000e, et. seq. and 42 U.S.C. § 1981.  42 U.S.C. § 1982 is only mentioned once more in the complaint, in the cause of action heading labeled "Refusal to Consider For Positions and/or failure to Hire Under 42 U.S.C. § 1982." (Doc. 1 at 7).  The paragraphs under that heading then reference § 1981 regarding Bradley's refusal to consider and failure to hire claims.  42 U.S.C. § 1982 concerns property rights- as Bradley raises no causes of action regarding property rights, and liberally construing his <u>pro se</u> complaint, the court will consider this claim to be raised under § 1981. However, to the extent that the complaint purports to raise any § 1982 claims, summary judgment should be granted, as Bradley has failed to allege an interest protected by the statutory language of that section.  "Alleged discrimination in the employment relationship does not implicate any of the concerns of § 1982." *Segura v. Texas Dept. Of Human Services*, Not Reported in F.Supp.2d, 2001 WL 681748, *7 (W.D.Tex. Feb. 14, 2001).

**(2) Whether Plaintiff's Title VII claims were timely raised**

Second, Raytheon argues that Bradley's Title VII claims based on alleged conduct occurring prior to January 20, 2007 are barred due to his failure to file an EEOC complaint within 300 days of the alleged discriminatory acts.  Specifically, Raytheon asserts Bradley failed

to raise the following issues in any administrative charge, and therefore failed to exhaust remedies regarding those issues: alleged harassment by Garcia during a December 7, 2006 performance review; non-selection for the IIS106969 risk manager position in Havlik's section; alleged harassment by Garcia and / or Ibarra during a March 2007 performance review; alleged failure to reassign Bradley to the ATFLIR program; and other "harassment, retaliation and discrimination" by his section supervisor in 2007.  In support of their argument, Raytheon cites *Lee v. Kroger*, 901 F.Supp. 1218, 1224 (S.D.Tex. 1995).  In *Lee*, the court held that the plaintiff failed to allege he was discriminated against or harassed where he checked the box labeled "retaliation" on his EEOC charge, but not the box labeled "race"- the court noted that nowhere in his charge did the Plaintiff allege discrimination or harassment based on race.  *Id*.

In this case, Bradley's October 8, 2007 complaint of discrimination submitted to the U.S. Department of Labor is his first documented claim of unlawful discrimination.  (Def. App. 105-112).  It is well-settled law that a person alleging a Title VII discrimination claim may recover only for conduct that occurred not less than 300 days before the filing of an EEOC complaint. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003).  In an apparent effort to invoke the continuing violations doctrine, Bradley cites the meetings which he had with Amos Wilson and Julia Cutsinger in the spring and in August of 2007.  *Supra*, at 5-7.  As noted, both Wilson and Cutsinger have denied that Plaintiff raised any concerns of discrimination.  However, even if Bradley's statements to the contrary are fully credited, such facts fail to satisfy the requisites for establishing a continuing violation.  *Frank, supra*, 347 F.3d at 136, citing *Huckabay v. Moore*, 142 F.3d 233, 238-40 (5th Cir. 1998).  Therefore relief on any alleged act of discrimination which Plaintiff claims to have occurred on or before January 20, 2007, is precluded due to untimeliness.

11

However, even if not barred by limitations, Bradley cannot show the existence of genuine issues of fact that would foreclose the granting of Defendant's motion for summary judgment.

**(3) and (4)  Plaintiff's Title VII § 1981 race discrimination claims based on non-selection and discharge**

In the third and fourth issues asserted, Raytheon argues that Bradley's Title VII § 1981 race discrimination claims based on non-selection and discharge fail as a matter of law because Bradley cannot show a prima facie case, cannot show that a similarly situated individual of a different race was treated more favorably than he was, and cannot overcome Raytheon's legitimate non-discriminatory reason for discharging him.

Bradley has offered no direct evidence of discrimination, (*See* Pl. App. 001-011), and there is no evidence in the record that would indicate Bradley was ever told that his non-selection or discharge were racially motivated.  Where no direct evidence of discrimination is offered, a Plaintiff's claim is analyzed under the "familiar burden-shifting framework". *Morrison v. Dallas County Community College*, 273 Fed.Appx. 407 (5th Cir. 2008).  Under the modified *McDonnell Douglas* burden-shifting analysis, the plaintiff must first establish a prima facie case of discrimination.  *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512 (5th Cir. 2001).  Once established, the defendant must rebut the presumption of discrimination by demonstrating a legitimate, nondiscriminatory reason for its actions.  *Id.*  If the defendant satisfies its burden, the plaintiff must show that the offered reasons are either a pretext for discrimination or that his protected characteristic was a "motivating factor" for the defendant's conduct.  *Id.*

To establish a prima facie case of race discrimination, Bradley must show that he was (1)

a member of a protected class, (2) qualified for the position he held,[5] (3) subject to an adverse

employment action, and (4) treated differently from other similarly situated employees. *Abarca*

*v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005), citing *Rios v. Rossotti*, 252

F.3d 375, 378 (5th Cir. 2001). Raytheon does not join issue with respect to the first three

elements, (Def. Br. 8); however, Raytheon argues that Plaintiff cannot show that he was treated

differently from other similarly situated employees, and therefore cannot establish a prima facie

case.

　　　　As set out above and as related in Garey Gaston's declaration, in the summer of 2006 in

his position as Deputy Program Manager for the PRISM project, he selected Bradley for a

temporary assignment as risk manager on the project to be mentored by Maria Lee in El

Segundo, California. In her affidavit, (Pl. App. 107-111), Ms. Lee opined that Bradley was an

excellent employee. On the other hand Gaston noted several shortcomings in his performance

(Def. App. 275-276). Each had conflicting opinions on the capabilities of Insun Chang, the

employee whom Gaston chose to replace Ms. Lee when she left the project prior to its

completion. Gaston noted that Ms. Lee did not work with Plaintiff on a daily basis and did not

witness all tasks which he was assigned to perform. He also made clear in his declaration that he

assigned Chang to replace Lee rather than as a replacement for Bradley. Irrespective of the

---

[5] The court takes note of the fact that Bradley was hired as a Software Engineer II on November 21, 2005, based in part on his possession of a Bachelor's degree in computer science. (Def. App. 292). Raytheon Human Resources manager Amos Wilson, the person whom initially approved Bradley's job offer with Raytheon, learned during the course of this litigation that Bradley did not actually possess a degree in computer science, but rather a degree in general business. (Def. App. 7, 123, 125, 291-293). Amos states that had Raytheon learned of this before the job offer, Bradley would not have been hired, and that he would have been fired for the falsification had he still been employed by Raytheon at the time this was discovered.

differing opinions which Gaston and Lee expressed with respect to the abilities of Plaintiff and Insun Chang, there is not even a hint that race was a factor in their assessments.  Most telling and dispositive of Bradley's attempt to establish racial discrimination as a basis for his termination is the fact that Gaston did not participate in the performance rankings of the employees under the supervision of Deborah Ibarra at the time of the RIF.

Insofar as Bradley asserts that Deborah Ibarra's suspension of an SQE position for which he applied and the subsequent placement of Mike Bailey, a Caucasian, as an SQE in the ATFLIR program as having been racially discriminatory, Ms. Ibarra has proffered legitimate, non-discriminatory reasons for the suspension and assignment of Bailey as an SQE.  *See* Ibarra's declaration, Defendant's App. 298-99 ¶¶ 5 and 6.  Bradley has failed to present any conflicting evidence from which a jury could reasonably find that the actions of Ms. Ibarra were the product of racial discrimination.  *Anderson v. Liberty Lobby, Inc*., *supra* at 477 U.S. 254, 106 S.Ct. 2513. To the contrary it is undisputed that an African-American, Thomas Brooks, held one of two SQE positions in Ibarra's section, and that after she completed the RIF procedure which resulted in Plaintiff's termination, two of the four remaining employees were African-American.

### (5) Plaintiff's race discrimination claims based on alleged harassment

Fifth, Raytheon argues that Bradley's race discrimination claims based on alleged harassment fail as a matter of law because he did not exhaust administrative remedies, cannot show that his discharge occurred because of his race, cannot show his discharge constituted "harassment" as a matter of law, and he failed to take reasonable advantage of the multiple measures Raytheon offered to prevent discrimination.  An examination of Plaintiff's administrative complaint (Def. App. 105-127) discloses that nothing in the complaint claims or

intimates that he was a victim of racial harassment.  Therefore, it is unexhausted and cannot be the basis for relief.  *Eg., see Lee v. Kroger, supra* 901 F. Supp. at 1223-23.  Moreover, to be actionable, harassment must affect a term, condition or privilege of employment.  *See Harvill v. Westward Comm., L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).  Further, to state an actionable claim the alleged harassment must involve "racially discriminatory intimidation, ridicule and insults." *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002).  Bradley's summary judgment materials fail to demonstrate a *prima facie* case of racially discriminatory harassment.

**(6) Plaintiff's retaliation claims**

To establish a *prima facie* case of retaliation under Title VII, Bradley must satisfy a three-part test:  (1) that he participated in a Title VII protected activity, (2) that he suffered an adverse employment action by his employer, and (3) there is a causal connection between the protected activity and the adverse action.  *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009), citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). "Summary judgment is appropriate if the plaintiff cannot support all three elements."  *Id.*, *citing Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 769 (5th Cir.2001).

Bradley first participated in a protected activity with his filing of DOL and EEOC complaints on October 8, 2007 and November 12, 2007, (Def. App. 105-112, 114), both of which post-dated his September 21, 2007 discharge by Raytheon.  Although Plaintiff claims that he engaged in protected activity prior to his termination when he asked Plaintiff's human resources representatives, Amos Wilson and Julia Cutsinger, for the procedures to file discrimination complaints, he cites no case which holds that such internal inquiries constitute

"protected activity" within the purview of Title VII.[6]  Therefore his retaliation complaint fails as a matter of law.  However, even if it be assumed *arguendo* that such inquiries are "protected activity", he has failed to show any causal connection between the inquiries and any adverse employment action.  He has proferred no competent evidence to establish that Deborah Ibarra had any knowledge of any communications which he had with the human resources representatives at the time she constructed the RIF matrix, which resulted in his discharge of which he was notified on September 7th.  After his position in Ms. Ibarra's department was being terminated he was given an opportunity to seek a position in another department prior to his September 21, 2007 discharge.  He interviewed with Robert Lawrence McCabe, Jr. but was not given a job offer.  In his declaration Mr. McCabe described his interaction with Bradley and why no offer was extended.  (Def. App. 288 ¶ 3).  More to the point as it relates to Plaintiff's retaliation claim is McCabe's unrefuted statement that McCabe was unaware that Bradley had ever expressed any complaint of racial discrimination.  (*Id*. 289 ¶ 5).  Without proof that the decision maker was aware of an employee's alleged protected conduct, a former employee cannot establish that the employer retaliated against him for engaging in such protected activity. *See Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 883-84 (5th Cir. 2003).

**RECOMMENDATION:**

For the foregoing reasons it is recommended that Defendant's motion for summary judgment be **GRANTED** and that all other pending motions be **DENIED**, the same being moot

---

[6]  As noted above, *supra* at 5 and 7, both deny that Bradley ever approached them complaining of discrimination.

in the event that Defendant's motion for summary judgment is granted.


Signed this 18th day of December, 2009.


_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE


## NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.